IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JOSEPH RAY JORDAN,**

    **Plaintiff,**

v.

**UNITED STATES OF AMERICA,**

    **Defendant.**

Case No. 18-cv-1100-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Joseph Ray Jordan, an inmate of the Federal Bureau of Prisons ("BOP") who is currently incarcerated at the Federal Correctional Institution located in Butner, North Carolina ("FCI – Butner"), brings this action for alleged violations of his federal rights that occurred while he was incarcerated at the United States Penitentiary located in Marion, Illinois ("USP – Marion"). Jordan was allowed to proceed on a single Federal Tort Claims Act ("FTCA") claim against the United States for negligence in failing to protect him from an inmate assault and in placing him in the Special Housing Unit ("SHU") after surgery on his jaw.

This matter is before the Court on several discovery motions filed by Jordan. He filed a motion to access certain discovery materials (Doc. 158) and a duplicate motion for the same materials (Doc. 161). The United States filed a response (Doc. 160) to the motion. Jordan later filed a motion for access to existing discovery materials (Doc. 164). The United States filed a response to that motion (Doc. 167). Jordan filed a reply brief

(Doc. 171). Jordan also filed a motion for leave to conduct additional discovery (Doc. 168). The United States filed a response to that motion (Doc. 169). Jordan also recently filed a motion for leave to obtain statements from inmates (Doc. 170).

## BACKGROUND

On October 3, 2018, Jordan filed his First Amended Complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80 (Doc. 16).[1] His Amended Complaint alleged that he was attacked by inmates in USP-Marion's Communications Management Unit ("CMU") and that the BOP Director and prison warden failed to protect him from the assault (Doc. 19, pp. 1-2). He also alleged that, as a result of the assault, he suffered a broken jaw (*Id.* at p. 2). Upon returning to the prison after surgery, he was placed in the CMU's special housing unit rather than the health care unit, which Jordan alleged caused him to be denied adequate medical care.

Jordan was allowed to proceed on a single count:

Count 1:     Defendant United States, by and through the negligence of the BOP Director and USP-Marion wardens, officers, and administrators, is liable for Jordan's 2014 assault and resulting injuries.

(Doc. 19, p. 3).

The original discovery deadline in this case was set for March 13, 2020 (Doc. 57). Jordan conducted discovery, serving written discovery requests (*See* Docs. 73, 74, 84). Discovery closed and the Court granted two extensions of the dispositive motion

---

[1] Jordan later attempted to file a Second Amended Complaint (Docs. 28, 66), but his motions were denied (*See* Docs. 56, 63, 73).

deadline (Docs. 97 and 103). Prior to the dispositive motion deadline, the Court assigned counsel to Jordan because he demonstrated difficulties conducting discovery in light of the pandemic (Doc. 106). Counsel was granted leave to file a motion to compel in order to resolve any outstanding discovery requests and to request additional discovery (Doc. 111). On August 14, 2020, Jordan's counsel filed a motion to compel to resolve outstanding discovery disputes and request additional discovery (Doc. 112). The Court granted the motion, in part, and ordered the United States to produce the relevant Discipline Hearing Officer ("DHO") report to Jordan's counsel, allowed counsel to submit additional discovery requests, and extended the discovery deadlines (Doc. 123). The parties also agreed to a protective order, which allowed the production of the DHO reports for attorneys' eyes only (*See* Doc. 121). Discovery was reopened and proceeded until March 2022. At that time, the Court reset the dispositive motion deadline (Doc. 136). On April 15, 2022, the United States filed its motion for summary judgment (Doc. 137).

After the summary judgment motion was fully briefed, Jordan filed a *pro se* motion seeking to dismiss his assigned counsel (Doc. 147). Jordan alleged that his counsel did not consult with him on discovery due to the protective order nor did he consult with counsel in filing a response to the United States's summary judgment motion (*Id*.). On June 15, 2022, the Court held a hearing on Jordan's motion regarding counsel. Jordan requested to withdraw and proceed *pro se* in filing a new response to the summary judgment motion. At that time, the Court warned Jordan that some of the discovery produced to his counsel was for attorney's eyes only under the protective order (Doc. 121) and would not be produced to Jordan for security reasons. He was given additional time to file his

own response to the pending summary judgment motion as well as a motion regarding his access to discovery materials. Subsequently, Jordan filed the pending discovery motions.

## ANALYSIS

### A. Discovery Documents

Jordan filed a number of motions seeking discovery documents which were previously produced to his assigned counsel. Jordan's initial discovery motions (Docs. 158, 161)[2] sought all non-protected documentary exhibits which accompanied the United States's summary judgment motion and Jordan's response, all protected materials which accompanied Jordan's response, and specific BOP program statements (Doc. 158, pp. 102).

The United States agreed to provide all of the documents attached to its motion, all non-sealed attachments to Jordan's brief, a list of all discovery, relevant BOP program statements, photographs of Jordan's injuries, and access to the surveillance footage (Doc. 160, pp. 1-2). The United States objected to providing Jordan with a copy of the surveillance footage but indicated that Jordan could review the footage at his current institution. The United States also objected to producing BOP program statements not specifically mentioned in Jordan's motion as the statements were available to the public and Jordan could obtain them on his own. The Government also objected to any documents provided to Jordan's counsel pursuant to the protective order and labeled

---

[2] Jordan's second motion to compel (Doc. 161) is a duplicate of his initial motion.

"attorney's eyes only." (Doc. 121). Those documents included two documents attached to Jordan's response under seal which included the DHO Report and medical records and photographs of inmate Menter, the inmate who attacked Jordan. The Government argued the documents contained private and sensitive information regarding inmate Menter. The Government was also willing to stipulate that Menter was punished as a result of the altercation while Jordan did not receive punishment. Further, the Government agreed to produce the other sealed documents attached to the response with redactions, so long as Jordan reviewed but did not maintain the documents in his possession.

Jordan subsequently filed a motion for access to certain existing discovery materials (Doc. 164). He acknowledged that he received discovery materials from the United States, to include: exhibits attached to the United States's motion for summary judgment, documents from Jordan's response which were filed in the public record, certain BOP Program Statements, and two photographs of Jordan (Doc. 164, p. 2). Jordan now seeks access to documents provided to his former counsel to include: partially unredacted investigative report and related materials, Inmate Menter's DHO report, intelligence research specialist position description, Jordan electronic copouts, CMU #1 Post Orders redacted, and CMU #2 Post Orders redacted. He also seeks documents not subject to the protective order: Marion CMU Supplement, Correctional Services Procedures Manual, Case Manager Position Description, and all documents referenced in deposition testimony. Jordan also objects to not being able to retain copies of documents filed under seal, noting that, at the time of filing, he had not yet been given

an opportunity to review those documents. The United States has since produced all previously produced documents not subject to the protective order. The United States also agreed to produce all discovery responses requested in Jordan's motion (Doc. 164, p. 3). Thus, at this time, Jordan has received some of the discovery documents[3] but objects to the withholding of some documents from his possession and the withholding entirely of discovery submitted for attorney's eyes only. After the final production by the United States, the following issues remain:

1. *Documents for Review*

Jordan seeks not only access to review those documents filed under seal and the surveillance video footage, but also to maintain those documents in his possession. Jordan does not believe that the United States has provided adequate justification for withholding those documents from his possession.

To the extent Jordan takes issue with his inability to maintain certain documents in his possession and requests to keep the documents, that request is **DENIED**. The United States has raised valid security concerns with allowing an inmate, such as Jordan, to possess such materials. Further, the Government has offered to allow Jordan to review the documents. At the time that Jordan filed his motion for access in September (Doc. 164), he had not yet been provided with an opportunity to review the items. The Court does not have any further update from Jordan as to whether he has since obtained access to those documents (*See* Doc. 171). Thus, Jordan is **DIRECTED** to file a Notice with

---

[3] A complete list of documents produced to Jordan in response to his first motion to compel can be found at Exhibit 1 to the United States's response (Doc. 167).

the Court indicating what access he has been given to review the documents. The United States is also **DIRECTED** to provide Jordan with a list of the documents held for review so that Jordan may refer to them when drafting his response brief. Notice by Jordan and the United States's document list is due on or before **November 29, 2022**.

### 2. *Sealed Documents Attached to Jordan's Response*

Jordan also objects to the United States withholding Menter's DHO report which was filed with Jordan's response (Doc. 141-1).[4] Jordan argues that as he was also charged with the same disciplinary infraction, the DHO report applies to him, and he is entitled to a copy of the report. Further, he believes that any private information, including identifying information of inmates, can be redacted.

But the DHO report was the main purpose of the parties entering into a protective order, limiting the documents to attorney's eyes only (Doc. 121). Issues with the sensitive nature of the documents were also part of the consideration in assigning counsel to Jordan. The Court warned Jordan when he asked to withdraw his counsel that a number of documents were for attorney's eyes only and that due to the nature of the documents, he would not have access to them. As the United States has pointed out, the DHO report contains private and sensitive information regarding Menter. Although Jordan argues that he is entitled to the DHO report because he was charged with the same infraction and the report relates to him, a review of the report, which his assigned counsel attached to the original response brief (Doc. 141-1), shows that the report is about the charges

---

[4] The United States has agreed to produce redacted versions of the other documents filed under seal, with the exception of the Case Manager position description (Doc. 167, p. 2).

against Menter. There likewise are no statements or considerations which would lead to relevant information about whether the BOP knew or should have known of the danger posed by certain Muslim gang members (Doc. 141-1). Further, Jordan's counsel only offered the report as proof that Menter was charged and convicted of assault, a fact to which the United States has agreed to stipulate (Docs. 140, p. 4; 160, p. 3). Because the United States has articulated valid security and privacy concerns (Doc. 160, pp. 2-3) and the document does not contain any information that would lead to relevant discovery in this case, Jordan's request for the production of Menter's DHO report is **DENIED**.

### 3. *Attachments to Investigative Report*

Although Jordan received a copy of the redacted Investigative Report, he also seeks to review the attached materials or have unredacted copies filed for in-camera review by the Court. He also seeks to obtain unredacted information contained on page 6 of the Investigative Report itself which contained interview statements from redacted inmates (Doc. 137-1, p. 26). But the United States has articulated a valid security reason for redacting the report, including the identities of witnesses and gang affiliation.

Jordan argues that he is entitled to pursue and receive materials even if the documents are privileged and cites to *Parrott v. United States*, 536 F.3d 629, 638 (7th Cir. 2007). In that case, the Seventh Circuit acknowledged issues with possessing materials which cause security concerns and noted that such concerns can be remedied by assigning counsel to the inmate or reviewing the documents in-camera. *Id*. The Seventh Circuit also indicated that the Court erred in not conducting a more targeted consideration of the materials.

This Court did assign Jordan counsel due to the security concerns raised by documents obtained in discovery, but Jordan chose to discharge his counsel and proceed *pro se*. He was warned that he might not be able to review some of the documents because of the protective order. The Court assigned counsel because the materials are of a sensitive nature and Jordan cannot possess them. Despite the Court's warning, Jordan chose to proceed without counsel. The investigative report was the subject of the protective order, and the United States has articulated a valid reason for having the redacted portions remain for attorney's eyes only.

Further, a review of the unredacted material (Doc. 141-1, pp. 7-10) demonstrates that the redactions contain no information which would likely lead to discoverable information regarding the prison's knowledge of the attack on Jordan. The redactions include the names of those interviewed and names of inmates, including Jordan and Menter. Thus, Jordan's request for an unredacted copy of the Investigative Report is **DENIED**.

### 4. *Additional Investigative Report Materials*

Jordan also seeks any materials that were gathered during the formulation of the investigation, including a memo (Bates 872), memo and note 1 (Bates 876-77), note 2 (Bates 878), note from inmate (Bates 880), Ops memo (Bates 881), and memo (Bates 882).

The United States has agreed to produce redacted versions of all of these requested materials except for the note from an inmate (Bates 880) (Doc. 167, p. 3). The United States cites a security concern in revealing the identity of the inmate who wrote the note. The writer specifically requested that his identity remain secret, and production of the note

would likely reveal the identity of the writer to Jordan. The United States has articulated a valid security concern with the production of Bates 880. Thus, Jordan's motion to produce that document is **DENIED**.

### 5. *Position Descriptions and Post Orders*

Jordan also seeks access to position descriptions and post orders from employees at Marion CMU. Specifically, he seeks the position description for the Intelligence Research Specialist (Bates 1192-97), position description for CMU guards (Bates 1198-1201), CMU #1 Post Orders (Bates 1562-71), and CMU #2 Post Orders (Bates 1572-79). Jordan argues that the positions and post descriptions are relevant to the United States's affirmative defense of the Discretionary Function Exception, which was raised in its motion for summary judgment.

But again, the United States has raised compelling security concerns with the release of these documents. The post orders indicate how staff are to carry out their duties for specific areas of the prison and are marked "Sensitive – Limited Official Use". They describe where and how to conduct checks. As the United States points out, allowing an inmate to possess those descriptions could allow inmates to avoid searches by staff in order to hide contraband or plan assaults. Further, rosters and position descriptions would also potentially allow an inmate to plan around prison security operations. Due to the security concerns raised by these documents, they will remain attorney's eyes only. Jordan's request to obtain the documents is **DENIED**.

### 6. *Redacted Materials*

In addition to the production of various discovery materials, Jordan requests that

the Court Order the United States to file unredacted copies of any redacted material provided to him and to include specific explanations for the redactions. He also requests that the names of inmates Menter and Shnewer be unredacted in any of the documents produced to him.

As to Jordan's request for the Court to review unredacted copies of every piece of redacted discovery provided to Jordan for review, the Court **DENIES** that request. Jordan has not raised issues with every redaction in the produced documents. And his counsel had ample opportunity to object to redactions prior to the close of discovery and failed to do so. Further, the Court has addressed the specific issues Jordan had with redactions raised in his motions. The Court also **DENIES** Jordan's request to unredact Menter and Shnewer from the record. Again, Jordan and his counsel had ample time to make objections to discovery produced throughout the course of this litigation and did not do so. The Court finds his requests now to be untimely.

### B. Request to Reopen Discovery

In addition to obtaining all of the discovery already produced in this case, Jordan asks to reopen discovery and serve an additional 25 interrogatories on the United States and a request for production (Doc. 168). Jordan argues that additional discovery is needed in order to adequately respond to the pending summary judgment motion. He also argues that the current discovery is inadequate. Jordan recently filed a motion for leave to obtain statements from inmates (Doc. 170) which also seeks additional discovery. He asks for a means to request and obtain statements from inmates that were housed in the CMU with Jordan at the time of the assault.

But Jordan has had extensive time to conduct discovery both before he was assigned counsel and with the help of counsel. Discovery in this case was reopened when the Court assigned Jordan counsel so that additional discovery could be obtained. Discovery has long since closed. The Court did not anticipate additional discovery being conducted when Jordan's counsel was discharged. In fact, the Court noted at the time that Jordan was allowed to file one motion identifying materials that were produced through the course of discovery but that he did not currently have in his possession. Jordan has now filed five motions regarding discovery. The United States has already filed its motion for summary judgment and the Court will not reopen discovery. Jordan's request to reopen discovery (Doc. 168) and his request for statements (Doc. 170) are **DENIED**.

## Conclusion

For the reasons stated above, Jordan's discovery motions (Docs. 158, 161, 164, 168, and 170) are **DENIED**. The Court will not reopen discovery and Jordan now has all of the discovery which was not subject to the protective order. Now that all remaining discovery issues have been resolved, the Court resets Jordan's deadline for filing a response to the pending summary judgment motion for **January 6, 2023**. The United States shall have **two weeks** from the date Jordan files his response to file a reply brief.

IT IS SO ORDERED.

DATED:   November 15, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**